In the Matter of PETER LANDAU, an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, February 9, 1982

#### APPEARANCES OF COUNSEL

*Donald J. Klein* of counsel (*Michael A. Gentile,* attorney), for petitioner.

*Arthur S. Olick* of counsel (*Anderson Russell Kill & Olick, P. C.,* attorneys), for respondent.

#### OPINION OF THE COURT

*Per Curiam.*

Petitioner Departmental Disciplinary Committee moves to confirm a hearing panel's report finding that the respondent was convicted of "serious crimes" and recommending a one-year suspension from the practice of law in this

State. Respondent Landau cross-moves either for disaffirmance or for a lesser suspension than sought by petitioner.

Respondent was admitted to practice as an attorney in this State in 1959. On November 22, 1976 he was convicted on plea of guilty in United States District Court (CD Cal) to two counts of employment of manipulative and deceptive devices in the offer and sale of securities, in violation of subdivision (a) of section 78ff of title 15 of the United States Code and 17 CFR 240.10b-5. Respondent was sentenced to two years' probation and a fine of $15,000, payment of half of which was deferred.

The Federal criminal information stems from activities which took place in 1970, at which time respondent had an active practice in Federal securities law matters, including the registration of securities with the Securities and Exchange Commission (S.E.C.). Respondent's law firm was counsel to Seaboard, Inc., a Los Angeles corporation engaged in the business of owning and controlling companies that acted as investment advisors to mutual funds and other investment programs. Respondent was also an officer of this corporation. He was alleged, both on an individual basis and while acting in concert with others, to have induced persons to purchase Seaboard stock with fixed-price buy-back guarantees that were undisclosed to the investing public, and that Seaboard funds and stock were used to fulfill these guarantees at prices higher than the existing market value of the Seaboard stock. These "put" arrangements were not disclosed in the S.E.C. registration statement, as required, nor were these facts disclosed to Seaboard shareholders. In fact, respondent acknowledged that the company books were falsified to conceal the use of corporate funds in pursuit of this scheme. Preliminarily viewing this activity as a "serious crime", this court temporarily suspended respondent from the practice of law in this State, effective July 16, 1981, pending final determination of disciplinary action (Judiciary Law, § 90, subd 4, par f).

Hearings were conducted in August and September, 1981, at which respondent and other witnesses testified in his behalf. Respondent now challenges the findings and recommendations of the hearing panel.

Respondent urges that suspension is unwarranted in this case because he was not guilty of a "serious crime" as defined in section 90 (subd 4, par d) of the Judiciary Law. That statute defines a "serious crime" as, *inter alia,* one in which "a necessary element * * * as determined by statutory or common law definition of such crime, includes * * * fraud * * * [or] deceit". The Federal information to which respondent entered his plea charged his engaging in "acts and practices which would operate as a *deceit* upon shareholders of Seaboard, Inc." (Emphasis added.) While section 78ff of title 15 of the United States Code, which imposes the penalties for violations of any laws, rules or regulations governing securities exchanges, does not specifically mention the element of deceit, the Federal regulation under which respondent was charged and to which he pleaded guilty, 17 CFR 240.10b-5, does. That regulation makes it unlawful

"(a) To employ any device, scheme or artifice to defraud,

"(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statement made, in the light of the circumstances under which they were made, not misleading, or

"(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security."

The Assistant United States Attorney who investigated the case for the Government made it clear, in testimony before the hearing panel, that respondent himself had not initiated these schemes, but had merely failed to disclose the existence of the "put" agreement in connection with the January, 1970 registration statement, and had failed to disclose the use of corporate funds in partial satisfaction of these transactions. In urging that his acts did not constitute a "serious crime" under the Judiciary Law, respondent points to the fact that the information to which he pleaded guilty did not involve the knowing violation of any particular statute or regulation. Respondent thus asks how fraud or deceit can be found in the absence of *scienter* or *mens rea.* But the law and regulation to which respondent

pleaded guilty punish the violator regardless of his lack of knowledge of that authority. The information did not imply knowledge of the specific law or regulation, but merely implied knowledge of wrongdoing (*United States v Peltz*, 433 F2d 48, 54, cert den 401 US 955). It is clear from the testimony of the Assistant United States Attorney that the employment of "no-knowledge" language in the information was merely an inducement resulting from the plea negotiations, inasmuch as such language would preclude imprisonment under Federal law. It diminishes the crime from a felony to a misdemeanor.

Nor can respondent take any solace from the testimony of the Assistant United States Attorney that had respondent not accepted the Government's plea offer, the case probably would have been dropped. That reasoning might have been of some value to respondent during the plea bargaining phase in 1976; it is of no moment here and now. The fact remains that the crime to which respondent pleaded guilty was serious in nature, regardless of respondent's allegedly passive participation. As such, suspension from practice is an appropriate punishment under subdivision 4 of section 90 of the Judiciary Law.

In mitigation of the severity of the proposed discipline, respondent points to the fact that his record as an attorney is otherwise unblemished, and his application for reinstatement to practice before the S.E.C. is currently being given favorable consideration. But that reinstatement follows a period of nearly six years during which respondent was suspended from practice before the S.E.C., pursuant to stipulation therewith. By comparison, a one-year suspension from practice as an attorney in this State does not seem harsh or excessive or unfair.

Respondent testified to significant financial difficulties, brought on by the fact that his obligations include financial support for his elderly parents, sole support for his mother-in-law, and considerable expenses for a daughter who is in need of extensive medical and hospital care. The hearing panel specifically took these points into consideration in mitigating the proposed punishment for professional misconduct which "might under other circumstances have warranted more onerous discipline". Respon-

dent cannot be heard to complain that because the punishment meted out was more severe than expected, the panel must have overlooked the significance of his arguments in mitigation.

The term of suspension from practice will be completed in July, 1982. We see no reason to disturb that recommendation. Accordingly, the report of the hearing panel finding that the respondent was convicted of "serious crimes" and recommending a suspension from practice for one year, effective July 16, 1981, should be confirmed, and respondent's cross motion for disaffirmance or mitigation should be denied, as should his application for oral argument.

MURPHY, P. J., SANDLER, SULLIVAN, ROSS and FEIN, JJ., concur.

Motion granted and respondent suspended from practice as an attorney and counselor at law in the State of New York for a period of one year, effective July 16, 1981 and until the further order of this court, as indicated in the order of this court, and cross motion to disaffirm the report of petitioner, denied.